UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 07-209-C

JUSTICE RESOURCE CENTER, ET AL.,                              PLAINTIFFS,

V.                              MEMORANDUM ORDER AND OPINION

LOUISVILLE-JEFFERSON COUNTY
METROPOLITAN GOVERNMENT,                              DEFENDANT.

* * * * * * * * * * *

This matter is before the court on the plaintiffs' motion for a temporary restraining order and a preliminary injunction (DE 3).  Two hearings have been held on this motion, at which the court made various findings of fact and stated various conclusions of law.  The court, having reviewed the record and being otherwise advised, will deny the plaintiffs' motion for the reasons stated on the record and in this opinion.

I.      PROCEDURAL BACKGROUND

On April 13, 2007, the plaintiffs filed their first complaint and the motion presently before the court (DE 1, DE 3).  The plaintiffs allege, and the defendant does not contest, that the defendant intends "to close the street of Broadway from 9th Street west to 34th Street" during the weekend of the 2007 Kentucky Derby Festival.  (DE 1 at 1.)  The plaintiffs also allege, and the defendant does not seriously contest, that this portion of Broadway runs through a predominantly African-American area of the city, and the plaintiffs further allege that the city's

intended actions "will cause great profit loss" and thus "irreparably harm black businesses" along the closed Broadway corridor. *Id.* Finally, according to the plaintiffs,"no other segment of the Louisville community will be negatively impacted by the actions of the Defendant[] as will be [t]he Louisville West End black community[,]" largely because the defendant does "not intend to close and will not close any other main thoroughfare" during the Derby weekend. *Id.* at 1-2.

For its part, the defendant claims that the "Derby Day Broadway traffic plan was developed by the police in reaction to an unofficial event: cruising – the act of driving up and down the boulevard to see and be seen." (DE 7 at 2.) According to the defendant, "the Derby Day cruising on Broadway developed into excessive gridlock, large crowds and deadly violence." *Id.* The plaintiffs do not seriously contest the defendant's claim that cruising occurs on Broadway, but they suggest that similar cruising also occurs all across the city on Derby Day, and they further claim that the defendant, acting "intentionally" and "motivated based on race[,]" has imposed this severe restriction solely on the predominantly African-American portion of Broadway at issue in this suit.

Accordingly, the plaintiffs conclude that the intended closing of Broadway constitutes racial discrimination and disparate treatment "in violation of the Fourteenth Amendment to the United States Constitution." (DE 1 at 2.) More specifically, in their amended complaint, the plaintiffs claim that the defendant's traffic plan will violate their federal constitutional rights in three ways: first, they

2

claim that the traffic plan will violate their rights to operate and conduct businesses "protected under the Due Process Clause of the Fourteenth Amendment to the United States Constitution"; second, they claim that the plan will violate their rights to equal treatment under the law "protected under the Equal Protection Clause of the Fourteenth Amendment"; and third, they claim that the traffic plan will violate their rights of free association protected by the First Amendment. (DE 6 at 9.)

To redress these alleged violations of their constitutional rights, the plaintiffs seek to enjoin the defendant from implementing the Broadway traffic plan. They also seek an order directing the defendant to develop and use a "less restrictive alternative safety plan which does not violate" the plaintiffs' constitutional rights, as well as "[a]ll other remedies available under law and equity and otherwise consistent with the relief requested herein." (DE 6 at 10.) In the motion presently before the court, the plaintiffs, invoking Rule 65 of the Federal Rules of Civil Procedure, essentially reiterate the allegations presented in their original complaint and seek to restrain the defendant "from putting the present Kentucky Derby Day Broadway traffic plan into effect without first seeking the input and suggestions of the black business owners along the Broadway corridor." (DE 3-10 at 1.) The plaintiffs also request an order requiring "that any plan that is adopted by the defendant[] must show a good faith effort to minimize any loss that will be suffered by the black business owners along the Broadway corridor." *Id.*

Both the original complaint and the still-pending motion for injunctive relief

are signed only by the Reverend Louis Coleman, a non-lawyer, as the Director of the Justice Resource Center. *See* DE 1 at 3, DE 3-1 at 2. Several affidavits, signed by business owners who will allegedly be affected by the intended Broadway closing, are attached to the motion for injunctive relief. *See* DE 3-2 through 3-9. In each affidavit, the affiant states the amount of money allegedly lost by his or her business as a result of similar street closures during last year's Derby weekend, his or her vehement opposition to the intended street closing this year, and his or her hope that "the courts [will] allow us a part in the decision making processes and an opportunity to present our plans to address the issues at hand." *Id.* Similar affidavits, with similar statements of financial loss, are attached to the plaintiffs' amended complaint. *See* DE 6-2 through 6-13.

On April 23, 2007, the court conducted an evidentiary hearing on the plaintiffs' motion for injunctive relief, as well as several preliminary issues raised by the defendant. At the hearing, counsel entered an appearance for the plaintiffs, who had previously proceeded pro se. On April 30, 2007, the court heard arguments on the plaintiffs' motion for injunctive relief and the defendant's preliminary issues.

## II.    ANALYSIS

In response to the plaintiffs' motion for injunctive relief, the defendant has raised preliminary issues which must be addressed before turning to the substantive merits of the plaintiffs' motion itself.

4

## A.    Federal Rule of Civil Procedure 11(a)

According to Rule 11(a) of the Federal Rules of Civil Procedure, "[e]very pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party."  Rule 11(a) also provides that "[a]n unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party."  Before the court's evidentiary hearing, none of the affiants and putative plaintiffs was represented by an attorney.  Therefore, the defendant claimed that the affiants should be stricken from this action under Rule 11(a) because none of them had signed any of the pleadings, leaving Reverend Coleman as the sole plaintiff.

The purpose of Rule 11(a)'s requirement that unrepresented parties must sign their pleadings is "'to make certain that those named as parties in an action in which there was no lawyer actually had assented to the filing of the action on their behalf.'"  *Gonzales v. Wyatt*, 157 F.3d 1016, 1021 (5th Cir. 1998) (quoting 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1334 (2d ed. 1987)); *see also Huffman v. Neb. Bureau of Vital Statistics*, 320 F. Supp. 154, 156 (D.C. Neb. 1970) ("Undoubtedly, one of the justifications for the quoted provision of Rule 11 is to make certain that the persons who are named as parties are actually in assent to the filing of an action on their behalf.").  In this matter, the concerns behind Rule 11(a)'s requirement are somewhat less pressing than in

5

other cases, because the putative plaintiffs filed signed affidavits along with the motion for injunctive relief, which indicate their support for the claims advanced in the motion and in the complaint.  Moreover, the 1993 Amendments to the Advisory Committee Notes on Rule 11(a) state that pleadings should be rejected for failure to sign or provide other required information only if "the omission of the signature is not corrected promptly after being called to the attention of the . . . pro se litigant." Because the defendant's response pointing out the potential Rule 11(a) violation was filed on April 19, 2007, and because counsel did not file an appearance on the plaintiffs' behalf until April 23, 2007, the court allowed the plaintiffs a brief opportunity to correct this error.

Although the plaintiffs filed an amended complaint, signed by counsel, within the timeline provided by the court, they did not refile their motion for injunctive relief along with the amended complaint.  Because "[t]here is no corresponding pleading requesting a preliminary injunction filed with the amended complaint[,]" the defendant now argues that "the preliminary injunction request is not before the court."  (DE 7 at 4.)  Since the defendant filed this argument, however, the plaintiffs have filed a twenty-page brief, signed by counsel, in support of their motion for injunctive relief.  *See* DE 8.  Keeping in mind the compressed time schedule of this matter, the court finds that the plaintiffs' request for a preliminary injunction *is* properly before the court.

**B.**     **Standing for Reverend Coleman and the Justice Resource Center**

6

The issue of standing, which presents "the threshold question in every federal case, determining the power of the court to entertain the suit[,]" is essentially a question about "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). According to the Sixth Circuit and the Supreme Court, "the standing requirement limits federal jurisdiction to actual controversies so that the judicial process is not transformed into 'a vehicle for the vindication of the value interests of concerned bystanders[,]'" no matter how worthy those values may be. *Coal Operators & Assocs., Inc. v. Babbitt*, 291 F.3d 912, 915-16 (6th Cir. 2002) (quoting *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982)). The court's inquiry into standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth*, 422 U.S. at 498.

To satisfy the constitutional standing requirements, first, "a plaintiff must have suffered some actual or threatened injury due to the illegal conduct of the defendant"; second, "the injury must be 'fairly traceable' to the challenged action"; and third, "there must be a substantial likelihood that the relief requested will redress or prevent the plaintiff's injury." *Coal Operators*, 291 F.3d at 916 (citing *Valley Forge*, 454 U.S. at 472). To satisfy the prudential requirements, first, "a plaintiff must 'assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties'"; second, a plaintiff

7

must present a claim that is "more than a 'generalized grievance' that is
pervasively shared by a large class of citizens"; and third, if the case involves a
statutory claim, "the plaintiff's claim must fall within the 'zone of interests'
regulated by the statute in question." *Coal Operators*, 291 F.3d at 916 (quoting
*Warth*, 422 U.S. at 499, and *Valley Forge*, 454 U.S. at 474-75). The burden of
demonstrating standing and pleading its components "with specificity" rests on the
plaintiff. *E.g.*, *Coal Operators*, 291 F.3d at 916; *see also Valley Forge*, 454 U.S. at
472 (stating that 'at an irreducible minimum, . . . the party who invokes the
court's authority" must demonstrate the elements of standing).

     The plaintiffs' complaint alleges that African-American *business owners*
along the Broadway corridor will suffer harm; however, unlike the affiants, the
plaintiffs have not claimed that the Justice Resource Center will be *directly harmed*
by the planned traffic regulation.[1]  Instead, the plaintiffs claim that the Justice
Resource Center has paid "thousands of dollars" to businesses directly affected by
the defendant's past Derby traffic policies in an effort to offset their alleged
financial and social losses.  The plaintiffs also allege that the defendant's traffic
plan injures the Justice Resource Center by depriving it of opportunities "to grow
and expand its outreach among the visitors and guests to the city during the most
active, prolific period in the city's tourism year."  (DE 8 at 5.)  The plaintiffs also

_____

     [1] The plaintiffs concede that Reverend Coleman, the original pro se plaintiff
in this matter, lacks standing; therefore, the court will address only the
defendant's argument that the Justice Resource Center lacks standing.

8

point to *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 262 (1977), for the proposition that the Justice Resource Center's nonprofit status alone does not prevent it from suffering an actual economic injury.

The court finds that the Justice Resource Center's voluntary payments to businesses allegedly harmed by the defendant's policies do not constitute a direct, actual injury to the Justice Resource Center. Moreover, as the defendant points out, the Justice Resource Center "[i]s not located on Broadway nor does it do business on Broadway." (DE 7 at 5.) Thus, the court finds that both the financial harm and the more inchoate "lost outreach" opportunities allegedly suffered by the Justice Resource Center are only indirect. Furthermore, no representative of the Justice Resource Center has substantiated or specified these vague claims of indirect loss. Finally, contrary to the plaintiffs' assertions, *Arlington Heights* does not establish standing for the Justice Resource Center. In *Arlington Heights*, the Supreme Court expressly found that a nonprofit party, which held a contingent contract of purchase on a tract of land, *would* suffer an economic injury from rezoning denials. *See* 429 U.S. at 261-63. The Justice Resource Center has failed to show or even allege such a direct economic loss in this case.

In sum, the plaintiffs have presented only unsubstantiated allegations of unspecified and indirect losses to support their argument that the Justice Resource Center has standing in this matter. "Several types of injury have been recognized as sufficient to confer standing on an organization suing on its own behalf": for

9

example, an organization may suffer reputational harm or be denied an opportunity to express its message, or it may be harmed if its ability to collect dues or other contributions is constrained. *E.g., NAACP v. Acusport Corp.*, 210 F.R.D. 446, 457 (E.D.N.Y. 2002). Therefore, the court does not find that the Justice Resource Center could never establish standing in this case or in a similar case. Rather, the court simply finds that the Justice Resource Center has failed to meet its burden of establishing the first constitutional component of standing in *this case* because it has failed to specify and substantiate how the defendant's conduct has caused *it* to suffer from some actual or threatened injury. In sum, the court finds that the Justice Resource Center has not shown that it is anything more than a concerned bystander seeking to vindicate the rights of others in this matter.[2] Accordingly,

**IT IS ORDERED** that both Reverend Coleman and the Justice Resource Center are **DISMISSED** as plaintiffs in this case.

## C.    The Plaintiffs' Claims for Injunctive Relief

───────────────

[2] Of course, "[e]ven an organization that lacks standing to sue on its own behalf may prosecute a suit on behalf of its members" when the following conditions are met: "'(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Acusport*, 210 F.R.D. at 457 (quoting *Int'l Union, United Auto., Aerospace and Agric. Implement Workers v. Brock*, 477 U.S. 274, 282 (1986)).

The court need not and will not reach this issue, however, because the plaintiffs' standing arguments are based entirely on the alleged direct standing of the Justice Resource Center. *See, e.g.*, DE 8 at 5 (arguing that the Justice Resource Center "enjoys the same constitutional protection as any other citizen, and has suffered the same category and type of injury as the other Plaintiffs named herein").

10

Rule 65 of the Federal Rules of Civil Procedure, under which the plaintiffs seek injunctive relief, provides for both temporary restraining orders and preliminary injunctions.  "A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney" under certain circumstances, *see* Rule 65(b); however, because the defendant has been given notice of and an opportunity to respond to the plaintiffs' request for injunctive relief, the court will deny the plaintiffs' request for a temporary restraining order as moot and focus on the plaintiffs' motion for a "temporary injunction," *see* DE 3, which the court will construe as a motion for a preliminary injunction under Rule 65.

In determining whether to grant a motion for a preliminary injunction, the court must consider and balance four factors: first, the likelihood of success on the merits; second, the likelihood of irreparable injury without the injunction; third, the likelihood of substantial harm to others if the injunction is issued; and fourth, the likelihood that the public interest will be served if the injunction is issued. *Blue Cross & Blue Shield v. Columbia/HCA Healthcare Corp.*, 110 F.3d 318, 322 (6th Cir. 1997).  These four "factors are not prerequisites to issuing an injunction but factors to be balanced" against each other. *United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 347-48 (6th Cir. 1998) (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985)).  In general, "[a] preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the

11

circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

This court is bound to resolve this matter on non-constitutional grounds if possible, following the long-standing practice of the Sixth Circuit and the Supreme Court. *E.g., Bowman v. Tenn. Valley Auth.*, 744 F.2d 1207, 1211 (6th Cir. 1984) (citing *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring)). For the time being, therefore, the court will assume, without deciding, that the first factor to be considered in resolving this motion – the plaintiffs' likelihood of success on the merits – should be weighed in favor of the plaintiffs. The court also recognizes, as the plaintiffs point out, that the loss of constitutionally protected freedoms, even for minimal periods of time, "unquestionably constitutes irreparable injury" for the purposes of resolving the motion for injunctive relief. *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976) (citing *N.Y. Times Co. v. United States*, 403 U.S. 713 (1971)). Considered in isolation, therefore, the first two factors suggest that the extraordinary remedy of injunctive relief might be appropriate in this case.

When all four factors are considered, however, the court finds that the balance of interests requires the denial of the plaintiffs' motion for injunctive relief. To begin, although the court appreciates the significance of the injuries, both financial and otherwise, alleged in the plaintiffs' complaint and affidavits, the court also finds that the defendant has shown that even more substantial harm to others

12

is likely to result if its traffic plan is enjoined.  The court finds, based on the

defendant's exhibits and the testimony of Assistant Police Chief Philip Turner, that

gridlock, disorderly crowds, and, crucially, serious – even deadly – violence[3] has

occurred in past Derby weekends along this stretch of Broadway.  The court further

finds, again based on the evidence submitted by the defendant, that such harm

may recur during the 2007 Derby weekend if the defendant's traffic plan is

enjoined.  On balance, therefore, the court concludes that the likelihood of this

substantial harm to others outweighs the significant harm alleged by the plaintiffs.

For similar reasons, the court also finds that the public interest is more likely

to be served if the plaintiffs' motion for injunctive relief is denied.  Beginning in

July 2006, the defendant held a community forum on Broadway and sent surveys

to Broadway addresses in an attempt to respond to the concerns of local residents,

business owners, community leaders, and public officials.  A synopsis of the

community forum and many of the survey responses have been submitted to the

court by the defendant.

----

[3] According to Turner's unrefuted testimony, during Derby weekend in 2005, when Broadway remained open, the city

> experienced an unacceptable level of violence . . . . A homicide occurred on Broadway, two shootings that I know of, a sex offense, multiple fights, disorderly behavior, sexual type acts, the drug usage, the drug trafficking, the intersections from 18th Street to 21st, I think, was the closest thing to a riot that's occurred in this community since I've worked here.

(DE 7-15 at 15-16.)

13

The responses provided in these exhibits are varied. Several survey respondents indicated their displeasure with the defendant's 2006 Broadway regulations. At least one resident complained that "[t]he blocking of Broadway made it difficult to reach our home" and that "[c]ruising did take place it just wasn't [on] Broadway [but] was transferred to other side streets[,]" *e.g.*, DE 7-5 at 1, whereas many respondents complained that the ordinance unduly constrained the Derby weekend operations of Broadway businesses, *e.g.*, DE 7-5 at 3, 5, while some respondents complained that the restrictions imposed a system approaching "apartheid" which inflicted "torment and degradation" on local residents, *e.g.*, DE 7-7 at 3-4, DE 7-6 at 1. Other respondents, however, indicated their conditional or uniform approval of the 2006 traffic plan and the attendant decrease in both cruising and violence. *E.g.*, DE 7-5 at 7-8, DE 7-6 at 5-6, DE 7-8 at 1-4.

The parties dispute whether these exhibits tend to show that the defendant attempted to make meaningful changes in this year's traffic plan in response to complaints from the community. More importantly for the purposes of this motion, however, these exhibits tend to confirm the fundamental allegations made by both sides: Broadway's closing in 2006 imposed financial and intangible injuries to local residents and business owners while reducing the violence and inconvenience of past years. The court is impressed with the credibility and the significance of the alleged and potential injuries to the plaintiffs, but when these injuries are considered along with the demonstrated public interest in preventing the problems with noise,

14

traffic, and violence that might recur on Broadway if the city's plan is enjoined, the court finds that the public interest will best be served if the city is allowed to proceed with its traffic plan for the 2007 Derby weekend.  Therefore, after considering the evidence and balancing the relevant factors, the court will deny the plaintiffs' motion for a preliminary injunction.  Accordingly,

IT IS ORDERED that the plaintiffs' motion for a temporary restraining order and a preliminary injunction (DE 3) is DENIED.

IT IS FURTHER ORDERED that the plaintiffs' oral motion to file an amended complaint is GRANTED and must be filed not later than May 8, 2008.

IT IS FURTHER ORDERED that the defendant need answer only the second amended complaint and that such answer shall be filed not later than May 18, 2008.

April 30, 2007

Jennifer B. Coffman, U.S. District Judge
Western District of Kentucky

15