**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

CIVIL ACTION NO. 07-209-C

BIG MOMMA'S SOUL KITCHEN, INC., ET AL.,                               PLAINTIFFS,

V.                              <u>MEMORANDUM OPINION AND ORDER</u>

LOUISVILLE - JEFFERSON COUNTY
METRO GOVERNMENT,                                                      DEFENDANT.

＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊

        This matter is before the court on the defendant's motion to dismiss (DE 19).

The court, having reviewed the record and being sufficiently advised, will deny the

motion.

**I.  Factual History and Procedural Background**

        The plaintiffs are businesses that operate along the western corridor of

Broadway.  They assert that the plan of the defendant, Louisville-Jefferson County

Metro Government ("Metro Government"), for handling traffic during the 2007

Kentucky Derby weekend, including closing or severely restricting access to the

predominantly African-American end of Broadway from 9th Street west to 34th

Street, violates their constitutional rights.

        The Kentucky Derby is held in May of each year and various events are

conducted throughout the Louisville-Jefferson County metropolitan area during

Derby weekend.  There are official events as well as unofficial activities traditionally

associated with the Derby.  The plaintiffs state that local businesses enjoy

increased revenue as a result of the Derby events taking place in the area.  One of the unofficial activities, called "cruising," occurs "along most major thoroughfares in the metropolitan area, including such locations as Bardstown Road, Baxter Avenue, Central Avenue and Broadway."  Complaint, DE 6, at 7.  "Cruising," according to the plaintiffs, is an automobile show that is a recognized aspect of the Derby weekend.  The defendant describes "cruising" as "the act of driving up and down the boulevard to see and be seen," and states that it is illegal under the Louisville Metro Code of Ordinances.  DE 7, at 2.  Cruising during Derby weekend draws spectators and participants, and the businesses located on those streets are patronized by both.

The plaintiffs are corporations registered to conduct business in the metropolitan area, are owned and operated by minorities, and are located in a predominantly African-American sector of the metropolitan area.  In previous years, the Metro Government implemented traffic control plans for Derby weekend that included limitations on access to the western portion of the metropolitan area (the "West End"), where the population is predominantly African-American.  In 2007, the Metro Government's proposed traffic control plan ("traffic plan") involved severely restricting traffic in the West End during the Derby festival, including blocking vehicular traffic along west Broadway.  According to the plaintiffs, the plan also included

> an overt and aggressive police presence, severe limitations on access
> to roadways, adjacent businesses and public recreation areas (i.e.,

> parks and parkways) to local business owners, residents and visitors
> to the West End through a system of road blocks and 'authorized
> passes' necessary for ingress into the sector, and a near complete
> restriction of traffic and pedestrian flow along the streets, parkways
> and parks of the city's West End.

Plaintiffs' brief, DE 8, at 1.

Prior to the defendant's actions restricting cruising on Broadway, the plaintiffs contend that they "derived substantial income and an increase in the 'goodwill' and business reputation from Derby festival patronage." Complaint, DE 6, at 7. According to the plaintiffs, such plans were not put in place for other parts of the city where the businesses are not owned and operated by African-Americans, and where the area is predominantly populated by Caucasians. Additionally, they assert their ability to conduct business is severely impaired by the defendant's actions.

The plaintiffs' first amended complaint (DE 6) asserts claims under the First and Fourteenth Amendments to the United States Constitution. DE 6. They moved for a preliminary injunction in April 2007 to stop the Metro Government from implementing the traffic plan. On May 1, 2007, the court denied the plaintiffs' motion for a preliminary injunction, dismissed Reverend Louis Coleman and the Justice Resource Center as plaintiffs, and granted the plaintiffs' oral motion to file a second amended complaint, which the defendant was directed to answer. DE 16. The plaintiffs did not file a second amended complaint, so the defendant filed an answer to the first amended complaint and moved to dismiss that

complaint.  DE 18, 19.

## II.  Standard of Review

The defendant asserts in its answer that the plaintiffs' amended complaint "fails to state a claim upon which relief could be granted."  DE 18, at 3; *see also* Fed. R. Civ. P. 12(b)(6).  Dismissal for failure to state a claim can be granted only when the defendant establishes "beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hiser v. City of Bowling Green*, 42 F.3d 382, 383 (6th Cir. 1994) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  The court must consider the pleadings in the light most favorable to the plaintiff and must accept as true all of the factual allegations in the complaint.  *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993) (citing *Conley*, 355 U.S. at 45-46).

## III.  Analysis

The plaintiffs claim that the defendant's conduct violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment and their right to freely associate under the law as protected by the First Amendment.

## A.  Due Process Claim

The plaintiffs allege that the defendant's traffic plan violates their procedural due process rights.  To succeed on that claim, the plaintiffs must first show that they had a property interest protected under the Fourteenth Amendment and that they were deprived of that interest, and then show that the procedures provided by

4

the defendant were not sufficient to protect their rights to due process.  *Warren v. City of Athens*, 411 F.3d 697, 708 (6th Cir. 2005).

The United States Constitution does not create or define property rights, but it does protect property rights as defined by state law.  *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002) (citing *Cleveland v. Bd. of Educ.*, 470 U.S. 532, 538 (1985); *Bd. of Regents v. Roth*, 408 U.S. 564, 570-71 (1972)).  Citing *City of Louisville v. Louisville Scrap Material Co.*, 932 S.W.2d 352, 356 (Ky. 1996), the plaintiffs claim that they have protected property interests because they are "businesses with property abutting Broadway."  In *City of Louisville*, the owners of property along a public street had a property right in that street "to the degree that it is a reasonable right of access."  932 S.W.2d at 357.  This right of access for owners whose property abuts a street includes a reasonable means of ingress and egress.  *Id.* (citing *Potter v. Citation Coal Corp.*, 445 S.W.2d 128 (Ky. 1969)).  The plaintiffs refer to their "right to both ingress and egress to and along the public streets of metropolitan Louisville during the course of conduct of business under the laws of Kentucky."  Plaintiffs' brief, DE 8, at 6.  The plaintiffs have not cited to a Kentucky case or law which elevates such rights to a constitutionally protected property right.  The cases to which they refer discuss property rights in the context of real property law.  However, property rights under Ohio law similar to those at issue here have been held to constitute a property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

5

*Warren*, 411 F.3d at 708-09.  Aware, therefore, that the rights on which the plaintiffs rely may be so construed by the Sixth Circuit Court of Appeals, the court will not dismiss the plaintiffs' due process claim for failure to demonstrate a protected property interest.

After the plaintiffs have made such a showing, the second part of the analysis requires them to demonstrate how the government's procedures were deficient.[1]  Property rights are not violated if adequate remedies are in place to address the deprivation of those rights.  *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981).  However, if the deprivation arises out of an established state procedure that is completed, then that state action may itself violate due process rights. It is not necessary to address procedural remedies when the violative action is itself a procedure.  *Macene v. MJW, Inc.*, 951 F.2d 700, 705 (6th Cir. 1991).  The plaintiffs assert that the Metro Government is depriving them of property through an established government procedure that itself violates due process rights, and thus the plaintiffs may prevail on their claims without pleading and proving the inadequacy of government processes that could remedy the wrong.  *See Id.* at 706.

According to the plaintiffs, the government's method of unilaterally adopting and imposing the traffic plan violates due process.  "Procedural due process generally requires that the state provide a person with notice and an opportunity to

---

[1] The defendant claims that the plaintiffs failed to plead the inadequacy of the state or administrative process, and "failed to plead that Kentucky's pre or post-deprivation remedies are inadequate or otherwise inappropriate."  Defendant's brief, DE 7, at 7.

6

be heard before depriving that person of a property or liberty interest.  *Warren*, 411 F.3d at 708 (citing *Thompson v. Ashe*, 250 F.3d 399, 407 (6th Cir. 2001)); *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994) ("[T]he process that is due before the state may deprive an owner of property includes notice to the owner prior to the deprivation and an opportunity for a predeprivation hearing."). According to the plaintiffs, the defendant did not seek public input regarding the traffic plan and it did not consider that the plan would violate the constitutional rights of the plaintiffs.  The plaintiffs also claim they were not given notice of the traffic plan for the May 2007 Derby prior to its adoption by the Metro Government in April 2007, and that the plan was not subjected to a public hearing where the plaintiffs could give input on the plan.  Therefore, the plaintiffs state a procedural due process claim upon which relief may be granted.[2]

### B.  Equal Protection Claim

The plaintiffs assert that the defendant's conduct violates their rights to equal protection under the law.  Under the Equal Protection Clause of the Fourteenth Amendment, state and local governments generally may not treat

---

[2] The court will not address whether the plaintiffs have asserted a substantive due process claim upon which relief could be granted.  The plaintiffs' complaint does not specify or articulate what type of due process claim they are asserting.  In their brief, the plaintiffs only address their grounds for a procedural due process claim.  However, the defendant argues in its brief that a substantive due process claim, if it is made here, should be dismissed for failure to state a claim.  The plaintiffs have not responded to the defendant's arguments regarding the substantive due process claim.  In the event the parties are unable to settle this matter, the plaintiffs will be required to articulate whether they are proceeding with a substantive due process claim in addition to their procedural due process claim.

similarly situated individuals differently based on impermissible criteria, such as race. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985). When the government employs a suspect classification such as race, its actions are reviewed under the strict scrutiny standard. *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995) (addressing an equal protection claim under the Fifth Amendment, but finding that the standards of review and approaches to equal protection claims are precisely the same under the Fifth and Fourteenth Amendments). Under this standard, the use of a racial classification in a government action is unconstitutional unless the action is narrowly tailored to meet a compelling government interest. *Id.*

To demonstrate a denial of equal protection, the plaintiffs must show that the government action was discriminatory. *Delia v. Court of Common Pleas of Cuyahoga County*, 418 F.2d 205, 206 (6th Cir. 1969). The plaintiffs claim unequal treatment by the Metro Government based on race. In support of their claim, the plaintiffs identify the area where their businesses are located as a predominantly African-American section of the city, and further state that their clientele consists primarily of African-Americans. According to the plaintiffs, the proposed traffic plan restricts traffic flow starting at a location that marks the delineation between the primarily African-American section of the city and the section which is predominantly Caucasian. The plaintiffs argue that the actions of the defendant are tantamount to disparate treatment based on race because the

8

closing of Broadway affects a predominantly African-American area.

The plaintiffs additionally assert that the defendant's conduct is not narrowly tailored to address a compelling government interest.  The defendant references the government's need to control traffic on the streets and to insure the safety of the public as compelling interests that justify the traffic plan.  According to the plaintiffs, the Metro Government could employ less restrictive alternatives that do not discriminate based on race.  Therefore, the plaintiffs have asserted facts in support of their equal protection claim that may entitle them to relief and the court will not dismiss this claim.

### C.  Right to Freely Associate

The plaintiffs claim that the defendant is violating their right to freely associate and assemble in the public areas restricted by the traffic plan.  To prevail on their claim under the First Amendment, as applied to the states through the Fourteenth Amendment, the plaintiffs must show that the defendant's proposed actions unduly restrict their rights.  The government may restrict First Amendment rights in areas designated as or traditionally viewed as "public" areas "only when the [restriction] is necessary to serve a compelling state interest and the [restriction] is narrowly drawn to achieve that interest."  *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677 (1998) (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985)).

The plaintiffs' rights to freely associate and assemble in the streets,

9

roadways, parkways, and public parks are allegedly restricted by the defendant's traffic plan.  According to the plaintiffs, the closing of Broadway where their businesses are located, and the pass system accompanying the traffic plan, restrict their ability to assemble.  Streets and parks are considered public areas and their use, including access to them, "has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens."  *Hague v. Comm. for Indus. Org.*, 307 U.S. 496, 515 (1939).  These rights are subject to limitations to protect the public and promote order, but they should not be restricted or denied under a "guise of regulation."  *Id.* at 516.  The plaintiffs' complaint alleges that less restrictive alternatives exist, that the government's actions with respect to the traffic plan are not narrowly tailored to serve a compelling government interest, and that the actions thus violate the plaintiffs' First Amendment rights.  The court will not dismiss the free association claim because the plaintiffs have asserted facts upon which relief may be granted.  Accordingly,

**IT IS ORDERED** that the defendant's motion to dismiss (DE 19) is **DENIED**.

**IT IS FURTHER ORDERED** that this matter is referred to Magistrate Judge James D. Moyer for the purpose of conducting a settlement conference.  The settlement conference will begin on March 17, 2008, at 1:00 p.m., and, should additional time be necessary, will resume on March 19, 2008, at 9:00 a.m.

Signed on  March 11, 2008

Jennifer B. Coffman, Judge
United States District Court